**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**AFNAN PARKER,**

***Plaintiff,***

**v.**

**WHOLE FOOD MARKET GROUP, INC.,**

***Defendant.***

**Civil No.: 1:23-cv-03321-JRR**

**MEMORANDUM OPINION**

The court has before it Defendant Whole Food Market Group, Inc.'s Motion to Partially Dismiss Plaintiff's Amended Complaint. (ECF No. 13; the "Motion.") The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, the Motion will be granted in part and denied in part.

## I. BACKGROUND[1]

Plaintiff Afnan Parker began his employment as a Service Member at Defendant's Glover Park Store in Washington, D.C., on May 2, 2022. (ECF No. 12 ¶ 7; the "Amended Complaint.")

### A. Incidents with Defendant's Employees

On Plaintiff's first day of employment, his supervisor, Zachary Smith, began making sexual advances toward him, including asking Plaintiff if he was married and "do you f*ck around?". *Id.* ¶ 9. The following day, Smith asked Plaintiff if he went to "gay bars," and made comments that he "wanted to see the tootsie roll between [Plaintiff's] legs" and that he "wanted to see how big it is," referring to Plaintiff's penis. *Id.* ¶ 10. Smith continued making comments to Plaintiff that he was "attracted" to him and that he "liked" him. *Id.* ¶ 11. Plaintiff made clear to

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Amended Complaint. (ECF No. 12.) *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

Smith that he was not interested in, or comfortable with, Smith's advances; he asked Smith to cease making such advances on both occasions. (ECF No. 12 ¶¶ 11–12.) In response, Smith told Plaintiff that he "better watch himself" because Plaintiff's 90-day probationary period was not yet completed; and Smith threatened that he "could have [Plaintiff] fired" if Plaintiff continued rejecting his advances. *Id.* ¶¶ 23–24. Following these occurrences, Plaintiff was "reprimanded and 'written up' for minor and petty instances." *Id.* ¶ 14. Plaintiff reported Smith to Defendant's Human Resources ("HR") Department, but no investigation or action was undertaken. *Id.*

On or about May 27, 2022, Defendant's employee, "Janelle," began calling Plaintiff a "nigger"; in one such instance, she stated that "when [she] came to this country [she] was told to stay away from niggers."[2] (ECF No. 12 ¶ 15.) Plaintiff filed a formal complaint regarding Janelle's comments to Defendant's HR Department, specifically with Defendant's employee, Franny De Leon. *Id.* ¶ 16. Again, no investigation or action was undertaken. *Id.* ¶ 17.

On or about June 6, 2022, other employees informed Plaintiff that an employee, "Sylvia," did not like him and had threatened to "slash his tires and put sugar in his gas tank." *Id.* ¶ 19. Because Defendant had previously failed to take any action on his complaints, instead of going to HR about Sylvia, Plaintiff filed a police report related to the "threats of violence" to which he was subjected during his employment. *Id.* ¶ 20.

**B. Accommodation Requests**

Plaintiff is a Muslim. (ECF No. 12 ¶ 18.) At some point during his employment, Plaintiff requested accommodation for religious observance to attend Mosque services on Fridays. *Id.* Manager Mike Boomley verbally granted his request, but De Leon ultimately denied Plaintiff's request for accommodation. *Id.*

---

[2] For purposes of accurately reciting Plaintiff's allegations, the court utilizes the language as stated by Plaintiff. For the balance of this memorandum opinion, however, the court refers to this racial epithet as "the N-word."

On or about June 10, 2022, Plaintiff injured his foot while at work. *Id.* ¶ 21. Plaintiff informed Boomley that, due to his injury, instead of his "regular shoes," it was necessary for him to wear his doctor-approved boot. *Id.* ¶ 22. Then, on June 13, 2022, Plaintiff filed an accommodation request with De Leon to work while wearing his medically-necessary boot. *Id.* ¶ 23. Defendant ultimately denied Plaintiff's request for accommodation, failing to engage in an interactive process with Plaintiff concerning the essential functions of the position, his ability to perform those functions, or the availability of another accommodation. *Id.* ¶¶ 23, 62.

**C. Termination**

On or about June 18, 2022, Plaintiff received a "new member counseling form which is a *de facto* warning" for employees in their probationary period. (ECF No. 12 ¶ 24.) Defendant then placed Plaintiff on administrative leave and terminated him for "hearsay and gossip." *Id.* ¶¶ 25–26. Plaintiff avers that he was terminated "because he reported to the police and complained of the sexual harassment, discrimination, and hostility he was subjected to at this job and/or refused his manager's sexual advances." *Id.* ¶ 25.

**D. Procedural History**

Following his termination, on October 14, 2022, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") (ECF No. 12-1; the "EEOC Charge"), and a charge of discrimination with the D.C. Office of Human Rights on October 30, 2023 (ECF No. 13-2; the "OHR Charge").[3, 4] In his EEOC Charge, Plaintiff identified the bases

---

[3] The Complaint appears to mistakenly identify the EEOC Charge as a charge before the Maryland Commission on Civil Rights and the OHR Charge as filed with the EEOC (ECF No. 12 ¶¶ 4–5); the charging documents reflect with which office they were filed as set forth above. (ECF Nos. 12-1; 13-2.)

[4] While the court generally does not consider evidence outside of a complaint when ruling on a 12(b)(6) motion, the court may consider "documents integral to and relied upon in the complaint, . . . so long as the plaintiff does not question their authenticity." *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). In the employment discrimination context,

of alleged discrimination as race, religion and "sexual harass[ment]," and Plaintiff alleged, *inter alia*, that he was wrongfully terminated; that he was "abused, sexually harassed, and humiliated" by Defendant's employees; that Smith sexually harassed him; that he was written up "for no reason"; that he had not heard from HR (seemingly) regarding his complaints; that Janelle called him the N-word; that he required a boot to work and was directed to fill out paperwork regarding his injury; that Sylvia did not like him and threatened to slash his tires and put sugar in his gas tank; that he was put on administrative leave; and that he was terminated. (ECF No. 12-1.)

In his OHR Charge, Plaintiff identified the bases of the alleged discrimination as race, sex, religion, disability, and sexual orientation. (ECF No. 13-2.) Plaintiff alleged, *inter alia*, that Janelle called him the N-word; that he reported Janelle's comment to De Leon and Smith; that Smith sexually harassed him and subjected him to sexual advances; that Smith said "You better watch yourself because your ninety (90) days probation are not over yet"; that he reported Smith's sexual harassment to Boomley and De Leon; that he was terminated by Boomley and Defendant's HR Department; and that Boomley and De Leon denied his request for a religious accommodation. *Id.*

Plaintiff initiated this action on December 6, 2023. (ECF No. 1.) With the court's leave, he filed his Amended Complaint on June 27, 2024. (ECF Nos. 11, 12.) In his Amended Complaint, Plaintiff asserts the following counts: Sexual Harassment (Count I), Race Discrimination and Hostile Work Environment (Count II), Religious Discrimination Based on Refusing to

---

courts regularly conclude that EEOC charges are integral to a plaintiff's complaint. *See, e.g.*, *Virella v. M.B.G. Enterprises Inc.*, No. CV RDB-21-1844, 2022 WL 36452, at *2 (D. Md. Jan. 4, 2022); *McKenzie-El v. Ports of Am.*, No. CV ELH-19-1980, 2020 WL 1185193, at *7 (D. Md. Mar. 12, 2020). The court may take judicial notice of EEOC charges without converting a motion to dismiss into one for summary judgment. *Yampierre v. Baltimore Police Dep't*, No. CV ELH-21-1209, 2022 WL 3577268, at *17 (D. Md. Aug. 18, 2022) (quoting *Campbell v. Mayorkas*, 3:20-cv-697-MOC, 2021 WL 2210895, at *1 n.3 (W.D.N.C. July 1, 2021)). Inasmuch as Plaintiff is required by law to exhaust his administrative remedies before he is entitled to seek judicial redress, the court finds the charges to be integral to the Amended Complaint. The court therefore considers Plaintiff's two charges where he has expressly attached the EEOC Charge to his Amended Complaint, *see Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing FED. R. CIV. P. 10(c)), and where he has not disputed the authenticity of the OHR Charge.

Accommodate (Count III), Violations of the Americans with Disabilities Act ("ADA") (Count IV), and Unlawful Retaliation (Count V). (ECF No. 12.) Defendant then filed the instant Motion. (ECF No. 13.)

## II. LEGAL STANDARD

A motion asserted under Federal Rule of Civil Procedure 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true,

must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

## III. ANALYSIS

In its Motion, Defendant seeks partial dismissal of the Amended Complaint, arguing (1) Plaintiff failed to exhaust his administrative remedies as to his claims of termination based on race and sex, or in retaliation for his request for his disability-based reasonable accommodation; (2) Plaintiff fails to allege an inference of discrimination based on race or sex; and (3) Plaintiff fails to allege an inference of retaliation. (ECF No. 13-1 at p. 7–12.) The court addresses each argument in turn.

By way of background, "Title VII forbids (i) employment practices that discriminate against an employee on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2, and (ii) retaliation against an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII, 42 U.S.C. § 2000e-3." *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 326–27 (4th Cir. 2018). The ADA similarly prohibits both employment practices that discriminate against a qualified individual on the basis of disability and retaliation against an individual because the individual opposed a practice made unlawful under the ADA. 42 U.S.C. §§ 12203, 12112. "[P]recedent for evaluating discrimination and retaliation claims under Title VII informs our analysis of the same theories of relief under the ADA." *Kelly v. Town of Abingdon, Virginia*, 90 F.4th 158, 169 n.6 (4th Cir. 2024).

### A. Administrative Exhaustion

Defendant first argues that Plaintiff failed to exhaust his administrative remedies as to his claims that he was terminated because of his sex or race or in retaliation for requesting a reasonable

accommodation because of his disability. (ECF No. 13-1 at p. 7.) Plaintiff contends that his EEOC Charge "provides ample factual allegations to support such claims." (ECF No. 16 at p. 2.)

Under Title VII, a plaintiff must exhaust administrative remedies prior to bringing suit in court. *See Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (citing 42 U.S.C. § 2000e-5(b)) ("It is well settled that before filing suit under Title VII or the ADEA, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC."). "The ADA incorporates Title VII's enforcement procedures, including the requirement that a plaintiff exhaust [his] administrative remedies by filing a charge with the EEOC before filing suit in federal court." *Shigley v. Tydings & Rosenberg LLP*, 723 F. Supp. 3d 440, 449 (D. Md. 2024); *see Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (explaining same).

Although the exhaustion requirement is not jurisdictional, "it is a necessary step in pursuing the claim in [c]ourt." *Jackson v. United States*, No. 8:22-cv-00772, 2022 WL 6754671, at *2 (D. Md. Oct. 11, 2022); *see Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 550 (2019) (holding that "Title VII's charge-filing requirement is not of jurisdictional cast"). The filing of an administrative charge serves two important purposes: "'First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the [Civil Rights] Act's primary goal, the securing of voluntary compliance with the law.'" *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Dickey v. Greene*, 710 F.2d 1003, 1005 (4th Cir. 1983), *rev'd on other grounds*, 729 F.2d 957 (4th Cir. 1984)). The exhaustion requirement is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, it "serves a vital function in the process of remedying an unlawful employment practice." *Balas*, 711 F.3d at 407.

Generally, "a plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Chacko*, 429 F.3d at 506. In determining whether a plaintiff has exhausted his claims, the court should look to claims raised in the administrative complaint, as well as claims "that would naturally have arisen from an investigation thereof." *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019) (quoting *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995)). "[W]hen the claims in [his] court complaint are broader than 'the allegation of a discrete act or acts in [the] administrative [complaint],' they are procedurally barred." *Id.* (quoting *Chacko*, 429 F. 3d at 508–10)).

In *Walton v. Harker*, 33 F.4th 165 (4th Cir. 2022), the Fourth Circuit succinctly explained:

> A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit. The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint. [F]actual allegations made in formal litigation must correspond to those set forth in the administrative charge. Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII [] lawsuit.

*Id.* at 172 (citations omitted). The court also recognizes that administrative charges "often are not completed by lawyers and as such 'must be construed with utmost liberality.'" *Balas*, 711 F.3d at 408 (quoting *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988)). The court, however, is not "at liberty to read into administrative charges allegations they do not contain." *Id.*

Defendant here contends that Plaintiff failed to exhaust certain claims he now asserts, including that he was terminated because of his race or sex and that he was retaliated against for requesting a reasonable accommodation because of his disability. (ECF No. 13-1 at p. 7–8.) While

Plaintiff may not have expressly stated in his Charges that he was terminated because of his race or sex, or that he was retaliated against because he requested a reasonable accommodation (based on disability), such claims would naturally have arisen from an investigation into his charges. *See Parker*, 915 F.3d at 306, *supra*. Indeed, Plaintiff alleged in his Charges that he was discriminated against on the basis of sex, race, and disability (among others), and he recounted what he viewed as threats to his employment by Smith, use of the N-word by Janelle, inaction by Defendant's HR Department following his complaints, termination, retaliation, and request for reasonable accommodation due to disability. (ECF Nos. 12-2; 13-2.) Whether Plaintiff was subjected to race or sex discrimination through unlawful termination or retaliation for requesting a reasonable accommodation would naturally have arisen from investigation of these topics and alleged discrimination. The court is therefore persuaded that Plaintiff's claims are not procedurally barred. *See Parker*, 915 F.3d at 306, *supra*.

**B. Unlawful Termination Based on Race and Sex**

Defendant next argues that the court should dismiss Plaintiff's claims to the extent he asserts that he was terminated on the basis of race or sex, because, Defendant avers, Plaintiff fails to allege an inference of race or sex discrimination. (ECF No. 13-1 at p. 9–10.) Plaintiff asserts that he has provided specific, detailed factual accounts of discriminatory treatment, which "when viewed in totality with Plaintiff's subsequent termination, create a plausible inference of discriminatory motive." (ECF No. 16 at p. 4.)

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-

2(a)(1). Relevant here, to prove a case of discrimination under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff must establish: "(1) membership in a protected class, (2) discharge, (3) while otherwise fulfilling Defendants' legitimate expectations at the time of his discharge, and (4) under circumstances that raise a reasonable inference of unlawful discrimination." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (*Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995)).

Importantly, however, at the motion to dismiss stage, "[i]t has long been the rule that 'an employment discrimination plaintiff need not plead a prima facie case of discrimination' under the evidentiary framework set forth in *McDonnell Douglas Corp.*" *Holloway v. Maryland*, 32 F.4th 293, 298 (4th Cir. 2022). "Instead, a Title VII plaintiff is 'required to allege facts to satisfy the elements of a cause of action created by that statute.'" *Bing*, 959 F.3d at 616 (quoting *McCleary-Evans v. Md. Dep't of Trasnp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)). Thus, "a complaint must contain '[f]actual allegations [sufficient] to raise a right to relief above the speculative level.'" *McCleary-Evans*, 780 F.3d at 585 (quoting *Twombly*, 550 U.S. at 555); *see Bing*, 959 F.3d at 616–17 (4th Cir. 2020) (noting that the court's inquiry is whether the plaintiff "alleges facts that plausibly state a violation of Title VII 'above a speculative level'"). "To allege that an employer acted because of an employee's protected status, there must be some connective thread between the alleged mistreatment and the protected status." *Brooks v. United Parcel Service Inc.*, No. CV DKC 20-2617, 2021 WL 4339194, at *12 (D. Md. Sept. 23, 2021) (citations omitted)). "In other words, the facts alleged must 'support a *reasonable inference* that the decisionmakers were motivated by bias.'" *Copes v. Johns Hopkins Univ. Applied Physics Lab'y, LLC*, No. CV RDB-23-2306, 2025 WL 19987, at *4 (D. Md. Jan. 2, 2025) (emphasis in original) (quoting *McCleary-Evans*, 780 F.3d at 586).

***1. Inference of Race Discrimination***

As Defendant notes, Plaintiff's factual allegations related to purported racial discrimination stem from alleged comments by Defendant's employee, Janelle, and Plaintiff's subsequent report to Defendant's HR Department. Plaintiff also makes several conclusory assertions unsupported by factual allegations, including that Defendant treated Plaintiff "differently because of his race," as well as disciplined and treated Plaintiff more harshly than his coworkers. (ECF No. 12 ¶ 42.) Such factual allegations, even accepted as true, fail to allege "some connective thread between the alleged mistreatment and the protected status." *Brooks*, 2021 WL 4339194, at *12. Plaintiff does not allege any connection between Janelle, the employee who made comments using the N-word, and the adverse employment action. Moreover, while Defendant's HR Department allegedly failed to investigate his claim, Plaintiff alleges no facts that, if true, might reasonably support the conclusion (without speculation) that Defendant's termination of his employment was motivated by bias based on race. The court will therefore grant the Motion to the extent it seeks dismissal of Count II on the basis of unlawful termination based on race.

***2. Inference of Sex Discrimination***

Conversely, the court is not persuaded that Plaintiff fails to state a claim that he was terminated on the basis of his sex. Plaintiff's factual allegations of sex discrimination stem from the alleged sexual harassment by his supervisor, Smith. In addition to detailing sexual comments and advances by Smith, Plaintiff alleges that, in response to Plaintiff's request that Smith cease his inappropriate conduct, Smith warned Plaintiff that he "better watch himself" because his 90-day probationary period "was not up yet." (EF No. 12 ¶ 12.) Plaintiff further alleges that Smith told him that Smith could have Plaintiff "fired" if he continued to reject his sexual advances. *Id.* ¶ 14. Within a brief timeframe thereafter, Plaintiff was issued a new member counseling form, placed

on administrative leave, and terminated. *Id.* ¶¶ 24–25. While Plaintiff does not specifically allege that Smith made the decision to terminate him, Plaintiff's allegations that Smith, as Plaintiff's supervisor, harassed him and subsequently made threats to take employment action during his probationary period—which inevitably did occur—are sufficient to allege a plausible inference of sex discrimination in termination. The court will therefore deny the Motion on that basis.

**C. Retaliation**

Finally, Defendant avers that Plaintiff fails to allege sufficient facts in support of a plausible inference of retaliation, specifically because he fails to allege the name of the decisionmaker or person who terminated his employment and whether that person knew of his protected opposition. (ECF No. 13-1 at p. 11.) Plaintiff argues in opposition that "the pattern of protected activities followed by increasingly severe adverse actions culminating in termination is more than sufficient to state a plausible claim for retaliation." (ECF No. 16 at p. 5.)

"Title VII proscribes discrimination against an employee because, in relevant part, [he] 'has opposed any practice made an unlawful employment practice by this subchapter.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (quoting 42 U.S.C. § 2000e–3(a)). The ADA anti-retaliation provision similarly prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter [the ADA]." 42 U.S.C. § 12203. Courts typically apply the standards for Title VII retaliation claims to ADA retaliation claims. *See, e.g., Laird v. Fairfax Cty.*, 978 F.3d 887, 893 n.5 (4th Cir. 2020) (noting that "[a]lthough [the plaintiff's] case involves claims under the ADA, we treat the Title VII context as being 'analogous' to the ADA for this purpose"). As with discrimination claims, a plaintiff "may prove that an employer took action with . . . retaliatory intent through

direct evidence or through the burden-shifting framework of *McDonnell Douglas*." *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 327 (4th Cir. 2018).

To establish a prima facie case of retaliation, a plaintiff "must show: '(1) engagement in a protected activity; (2) [an] adverse employment action; and (3) a causal link between the protected activity and the employment action.'" *Barbour v. Garland*, 105 F.4th 579, 589–90 (4th Cir. 2024) (quoting *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)). After a prima facie showing, "[t]he burden then shifts to the [employer] to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (citation omitted). If such showing is made, the burden then "shifts back to the plaintiff to rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons were not its true reasons, but were a pretext for discrimination." *Id.* (citation omitted). "[E]stablishing a 'causal relationship' at the prima facie stage is not an onerous burden." *Strothers*, 895 F.3d at 335 (citing *Burgess v. Bowen*, 466 F. App'x 272, 283 (4th Cir. 2012) (explaining that "[v]ery little evidence of a causal connection is required to establish a prima facie case [of retaliation]")). "[A] plaintiff may demonstrate causation by temporal proximity, or by 'the existence of facts that suggest that the adverse action occurred because of the protected activity,' or by a combination of the two." *Barbour*, 105 F.4th at 593.

As with a discrimination claim, however, a retaliation claim "may survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) even if the complaint does not allege facts sufficient to establish the *McDonnell Douglas* framework's prima facie case." *Id.* at 590. "At bottom, in order to adequately plead a Title VII retaliation claim," and thus, by relation an ADA retaliation claim, "the complaint must 'allege[ ] facts supporting a plausible inference that [the employer took an adverse employment action against the plaintiff] 'because' of [the plaintiff's]

protected activity.'" *Id.*

Relevant here, at the pleading stage, the Fourth Circuit does not support a rigid requirement that a plaintiff must allege facts to show knowledge on the part of a decision maker. In *Miller v. Maryland Department of Natural Resources*, the Fourth Circuit reviewed, *inter alia*, the district court's determination that the plaintiff had failed to allege a causal connection because "'the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the *prima facie case*' of retaliation." 813 F. App'x 869, 878 (4th Cir. 2020). (emphasis in original) (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)).

The Fourth Circuit reasoned:

> In his First Amended Complaint, Appellant alleged he had discussed his requested accommodations with Corporal Hunt and Corporal Beckwith, and that Lieutenant Marconi was also aware of his injuries and need for restricted duty. However, Appellant did not include any allegations regarding who made the decision to terminate him or who informed him that he was being terminated. Appellant alleged only that "[o]n September 6, 2016, [he] was notified that he was being terminated." Because Appellant did not identify who made the decision to terminate him, or whether that person had knowledge of his requests for accommodations, the district court held Appellant failed to allege a causal connection.
>
> While we agree Appellant failed to allege knowledge on the part of a decision maker, we disagree that Appellant was required to make this showing at the pleading stage. Importantly, "an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss," *Swierkiewicz*, 534 U.S. at 515, 122 S.Ct. 992. The *Swierkiewicz* Court recognized that it would "not [be] appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* frame-work does not apply in every employment discrimination case. For instance, if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements of a prima facie case." *Id.* at 511, 122 S.Ct. 992 (citation omitted). In *McCleary-Evans*, we explained how this rule can be harmonized with the *Twombly-Iqbal* pleading standard. Specifically, we

> recognized that a prima facie case "may require demonstrating more elements than are otherwise required to state a claim for relief." *McCleary-Evans*, 780 F.3d at 584. Thus, rather than pleading all elements of a prima facie case, a plaintiff need only plead "facts to satisfy the elements of a cause of action created by th[e] statute." *Id.* at 585.

*Miller,* 813 F. App'x at 878 (record citations omitted). Guided by the Fourth Circuit's holding that the employment discrimination statute (there, the ADA) "does not require proof of" the knowledge requirement "at the pleading stage," and that "it only requires some facts supporting a 'reasonable inference' of causation," the court is not persuaded that Plaintiff's Amended Complaint is fatally flawed in this respect. *Id.*

Defendant does not challenge that Plaintiff ably alleges protected opposition and adverse action; rather, Defendant contends that Plaintiff fails to allege facts in support of the third element regarding knowledge of a specific decisionmaker. (ECF No. 13-1 at p. 11.) Defendant is correct that Plaintiff fails to identify a specific decisionmaker related to his termination, beyond "Defendant" generally; however, the Charges of Discrimination (which both parties put before the court) appear to state that Boomley and Defendant's HR Department put Plaintiff on administrative leave and terminated him. (ECF Nos. 12-1, 13-2.) Regardless, Plaintiff expressly alleges that Smith, his supervisor, threatened his employment for rejecting his sexual advances, that he complained to no avail to HR, and that accommodation requests submitted to Boomley and Defendant's HR Department were denied. The alleged foregoing events all seem to have occurred within a month and a half of the alleged subsequent adverse employment actions, with his request for accommodation related to wear a work boot occurring a mere five days before receiving the "new member counsel form" which immediately preceded his administrative leave and termination.

These allegations adequately complain of protected activity and adverse employment

action with close temporal proximity and contain facts that suggest that the adverse employment action occurred because of the protected activity; therefore, Plaintiff alleges a plausible inference of retaliation. *See Barbour*, 105 F.4th at 593, *supra*. Plaintiff's allegations are sufficient at this stage even where he has not specifically named the decisionmaker who subjected him to the alleged adverse actions. *See Miller*, 813 F. App'x at 878, *supra*. The court will therefore deny the Motion to the extent it seeks dismissal of Count V. Defendant is of course free to renew these arguments following discovery based on a Rule 56 motion.

## IV. CONCLUSION

For the reasons set forth herein, by separate order, Defendant's Motion (ECF No. 13) will be granted in part and denied in part.

Date: February 4, 2025

/s/______________________
Julie R. Rubin
United States District Judge